UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN HORNE, ) | |
| RONALD BROWN ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | |
| ) | C.A. No. 04-10718-RGS |
| CITY OF BOSTON, ) | |
| SERGEANT ERIC BULMAN, and ) | |
| SERGEANT JOHN DAVIN, ) | |
| ) | |
| Defendants ) | |

## DEFEENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is an employment case. Plaintiffs Steven Horne and Ronald Brown, who at the times relative to this case were Boston Police Officers[1], bring suit against their former first line supervisors, Sergeant Eric Bulman and Sergeant John Davin. Plaintiffs allege that the supervisors caused their transfers from the Youth Violence Strike Force ("YVSF" or, colloquially, the "gang unit") to District C-6 and District B-2, respectively, on March 31, 2001. Plaintiffs further allege that they did so not for any legitimate purpose, but in retaliation for plaintiffs' exercise of their First Amendment rights to free speech and were motivated by racial bias.

The complaint alleges that Bulman and Davin violated federal law (Complaint, Count I ), conspired to engage in discrimination against the plaintiffs

---

[1] In the time since the filing of this complaint, Ronald Brown was terminated from his position as a BPD officer after being found guilty of off-duty felonious actions, for which he was on administrative leave when this suit was filed. Steven Horne remains an officer with the BPD. For purposes of this memorandum, all officers will be referred to with the positions they held at the time of the events at issue.

1

because of race and deprived them of equal protection of the laws (Count II), interfered with and denied plaintiffs the benefits, privileges and terms of their contractual relationship with the City (Count III), discriminated against them in the terms of their employment (Count IV and V), violated their civil rights by subjecting them to a "scheme of harassment" (Count VI [erroneously listed as Count V in the complaint]).

The plaintiffs' claims against the City of Boston have been bifurcated from the claims against the individual defendants, and those claims are not at issue here.

Defendants Sergeant Detective Eric Bulman and Lieutenant John Davin (collectively, "Defendants"), have moved for summary judgment pursuant to Fed.R.Civ.P. 56(b) and L.R.D.Mass. 56.1, because the undisputed material facts demonstrate that their supervisory actions were lawful, appropriate, and not motivated by any unlawful animus, and plaintiffs cannot recover under any theory pled in the complaint.

As discussed more fully below, no genuine dispute of material fact exists with respect to plaintiffs' claims, and Defendants are entitled to judgment on this record.

## ARGUMENT

I. **STANDARD OF REVIEW**

Once Defendants have submitted a properly supported motion for summary judgment, plaintiffs "may not rest upon mere allegations . . . but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A genuine issue for these purposes is more than a "metaphysical doubt." Matsushita Elect. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). An issue is only genuine if "the evidence is such that a reasonable

jury could return a verdict for" the plaintiffs. Id. "[B]rash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citations omitted). Even where motive or intent is at issue, the standard "compels summary judgment if the non-moving party 'rests merely on conclusory allegations, improbable inferences, and unsupported speculation.'" Feliciano De La Cruz v. El Conquistador Resort & Country Club, 218 F. 3d 1, 5 (1st Cir. 2000).

   A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995). Once the movant has made such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trial worthy issue. Id. The nonmovant "may not rest upon the mere allegations or denials of the [moving] party's pleading," and instead "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the nonmovant fails to make "a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), summary judgment must issue against him. Thus, "even in employment discrimination cases, 'where elusive concepts such as motive or intent are at issue,' this standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**II.   AS NO GENUINE ISSUE OF MATERIAL FACT EXISTS, DEFENDANTS BULMAN AND DAVIN ARE ENTITLED TO SUMMARY JUDGMENT ON EACH COUNT OF THE COMPLAINT**

**A.   Civil Rights Violations (Counts I and V)
Free Speech and Equal Protection**

To prevail under Count I, alleging violations plaintiffs' First Amendment rights to free speech and equal protection of the laws, brought pursuant to 42 U.S.C. § 1983, the Court applies a three-part test: first, did plaintiffs speak on a matter of public concern? If so, the court balances the public interest of the speech against the potential impact on the delivery of government services by the government as employer. Third, the plaintiffs must show that their speech was a substantial or motivating factor of the adverse employment action. Pickering v. Bd. Of Ed., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Mt. Healthy City School Dist. v. Doyle, 97 S.Ct. 458, 575 (1977). See also Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997); Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998). To make a case under the Massachusetts Civil Rights Act, G.L. c. 12 § 11I, the state law analog to 42 U.S.C. § 1983, plaintiffs must show (1) their constitutionally protected rights (under either the federal or state constitutions) (2) have been interfered with, or attempted to be interfered with, (3) by threats, intimidation or coercion. Ayasli v. Armstrong, 780 N.E.2d 926, 934 (Mass.App.Ct. 2002). Action taken with the intention or natural effect to discourage an individual from the exercise of free speech is sufficient to satisfy the "threats, intimidation and coercion" element of the MCRA. Reproductive Rights Network v. Pres. of the Univ. of Mass., 45 Mass.App.Ct. 495, 506-509 (1998). The action must be taken intentionally, that is, with the aim of stifling plaintiffs' speech.

Plaintiffs allege that their transfers were ordered in retaliation for the claims of racial tension that they raised at the YVSF during the meetings regarding Dorchester High School and thereafter.  Defendants concede that plaintiffs' complaints about racial issues in the YVSF are a matter of public concern, and do not contend that these issues were raised in a manner that was unduly disruptive to the operation of the YVSF.  Defendants do contend that the plaintiffs' evidence is insufficient to satisfy the third prong of the Pickering analysis:  that the protected expression was a substantial or motivating factor in the decision to transfer them out of the YVSF.  Pickering, 391 U.S. at  568 (1968);  Mullin v. Town of Fairhaven, 284 F.3d 31, 38 (1st Cir.2002).  Even assuming that Bulman and Davin are appropriately named defendants in this employment action (an assumption that defendants make for purposes of summary judgment only, since neither sergeant had the authority to transfer anyone, and the unit commander, Lt. Foley, accepts full responsibility for the employment decision), there is no competent evidence from which a factfinder could conclude that plaintiffs' speech was causally linked to the decision to transfer them.

There is no temporal proximity between plaintiffs' speech and the transfers.  Plaintiffs were among a number of black police officers who complained to Lt. French about comments made by white colleagues during a meeting to discuss strategies to combat school violence in or around February, 2000 – over a year prior to the transfers of March 31, 2001.  Plaintiffs concede that they did not speak about these issues again during any of the sessions convened by the YVSF command to address the issues raised.  (Facts, 54, 60, 65).  The lack of temporal proximity undermines plaintiffs' claims that their speech, and the decision to transfer, are causally linked.  Benoit v. Tech. Mfg.

Corp., 331 F.3d 166, 175 (1st Cir.2003)(noting that a gap of one year between protected conduct and employment action, without more, cannot forestall summary judgment for the defendant); see also Dressler v. Daniel, 315 F.3d 75, 80 (1st Cir.2003) ("[T]he inference of a causal connection [between the protected conduct and the adverse action] becomes more tenuous with time."); Mesnick v. General Electric Co., 950 F.2d 816, 828 (1st Cir. 1991) (observing that a nine month gap between the protected activity and adverse action suggested the absence of any causal connection).

   They point to no discrete instance, occurring after the unit wide meetings, where Bulman engaged in any conduct that could be deemed even remotely retaliatory or discriminatory. In fact, on the one instance that Brown recalls speaking to Bulman about any race-based concerns, Brown believed that Bulman took action, since the conduct complained of did not recur. (Facts, 60).

   Likewise, there is no competent evidence from which a factfinder could conclude that Davin engaged in any activity subsequent to the unit wide meetings that could be deemed retaliatory or discriminatory. The isolated instances to which plaintiffs refer (see Facts 69 – 76, alleging disputes over decisions to arrest or allow surrender, obscenities exchanged between officers, accusations of badgering) are expressions of "workplace politics, insubordination, and raised voices – the daily currency of complex relationships between and among superiors and subordinates, particularly in a hierarchical and stressful setting such as a big city police department." Williams v. City of Boston et al., United States District Court Civil Action No. 00-11082-NG (Memorandum and Order on Motion for Summary Judgment, September 9, 2003). Likewise, plaintiffs' assumption that Davin spoke only of them at the January 2001 PAM

6

is contradicted by the factual record, and plaintiffs' beliefs about the content of a meeting they never attended cannot gainsay the sworn testimony of the officers who did. Quinones v. Buick, 2006 WL 247893 (1st Cir. 2006) ("[Plaintiff's] mere conclusory suspicion is no substitute for specific evidence that discrimination was involved", citing Johnson v. Nordstrom, Inc., 260 F.3d 727, 733 (7th Cir. 2001)).

      A review of the personnel subject to transfer from the YVSF further compels the conclusion that plaintiffs were not singled out on account of their speech. Plaintiffs were with a group of officers who brought concerns to French; others included Neva Grice, Dave Singletary, Vance Mills, and Greg Brown. The "spokesmen" for the group were Dave Singletary and Vance Mills. (Facts, 48). None of these individuals (all black officers) were transferred. (Ex. 2, personnel orders). Other officers, black and white, were transferred from the unit based on the commander's perceptions that those officers were not the right match for this specialized unit (Facts, 61, 62; 102, 103). The individualized decisions to transfer officers further compels the conclusion that plaintiffs were not targeted on account of their speech or race.

      However, assuming for purposes of this argument that plaintiffs could satisfy the third prong of the Pickering analysis, the evidence in the record shows that the plaintiffs would have been transferred out of the unit regardless of their speech, based upon their commanders' legitimate concerns about their performance. Bulman and Davin are superior officers, whose duties include correcting and commending their subordinates' performance. They did both: they criticized when they were displeased with plaintiffs' performance, and recommended them for commendations when the plaintiffs excelled. That plaintiffs disagreed with Bulman and Davin's assessment of

their performance – the essential facts of which are not in material dispute[2] – is of no moment. Even if plaintiffs believe that they should not have been criticized for their performance, there is no constitutional right to be free from supervisory correction, even if it is unwise. See, e.g., Ronda-Perez v. Banco Bilbao Vizcaya Argentaria, 404 F.3d 42, 48 (1st Cir. 2005) (holding in context of Title VII burden shifting analysis that the statute is not a guarantee against inaccuracy by an employer, only against illegal discrimination).

Since defendants can rebut plaintiffs' Pickering showing, by demonstrating that they would have raised the same concerns to their own supervisors even if plaintiffs had not engaged in critical speech, they are entitled to summary judgment. "A[n] [employee] should not have the employment question resolved against him because of constitutionally protected conduct. But that same [employee] ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a[n] [employment decision] on the basis of that record …" Mt. Healthy School Dist. v. Doyle, 429 U.S. 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977).

Accordingly, summary judgment should issue for the defendants on Count I and Count V of the plaintiffs' complaint.

      **B.**     **Discrimination in Employment**

      **Count II (42 U.S.C. § 1985, conspiracy to violate plaintiffs' rights because of race),**

---

[2] Defendants anticipate that plaintiffs will claim that they were not "secretive," and that the instances where Bulman expressed displeasure, such as being uniformed when plaintiffs obtained information on other squads' cases and acted upon it (Facts, 29), or where Brown shared information on a federally sought fugitive in "bits and pieces" (Facts, 34-35) were based on Bulman's inaccurate understanding of their actions. However, plaintiffs agree that with regard to the first instance, they acted on another squad's case; with the second, Brown's description of the manner in which he presented information to Bulman is consistent with Bulman's – that there was "teeth pulling" involved to get the full story.

8

**Count IV (42 U.S.C. § 2000e and M.G.L. c. 151B, race discrimination and retaliation for speech)**

An employee subjected to adverse employment action on account of race has a cause of action under both Title VII and M.G.L. c. 151B. See Brissette v. Franklin County Sheriff's Office, 235 F.Supp.2d 63, 84-85 (D.Mass.2003). There is no material difference in the analysis of a race discrimination claim under the two statutes, and indeed the Massachusetts Supreme Judicial Court often looks to Title VII case law in its analysis of ch. 151B. See Harvard Law School Coalition For Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 69 at n.3 (1992).

The First Circuit has articulated that the prima facie case in a claim of race discrimination is met by a showing that: (1) plaintiff is a member of a protected class, (2) he performed his job duties acceptably, (3) he suffered a materially adverse job action, and (4) his position was filled by a person whose qualifications were similar to his[3]. Conward v. Cambridge School Committee, 171 F.3d 12, 19 (1st Cir. 1999). The prima facie case under Massachusetts law is substantially the same. See Aldair v. Daniel O'Connell's Sons, 20 F.Supp.2d 210, 215 (D.Mass.1998); Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34, 39 (2005).

In the absence of direct evidence of discrimination, both Massachusetts state courts and the federal courts employ the three-stage, burden shifting paradigm set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 – 805 (1973). See also Abramian v. President & Fellows of Harvard College,

---

[3] Defendants assume that plaintiffs will allege they were "replaced" by officers Long and McLaughlin, whom they believe was favored for the YVSF over them. The record does not support this allegation; Long was transferred into the YVSF along with six other officers on March 31, 2001, when plaintiffs were transferred out; McLaughlin was transferred to the unit on January 4, 2002. (Ex. 2, personnel orders). Neither transfer was a one-for-one exchange.

9

432 Mass. 107, 116 (2000) (employing McDonnell Douglas framework in analyzing claims under c. 151B).   That is, plaintiff makes out the prima facie case of discrimination, and upon doing so, the burden shifts to the employer to rebut the presumption created by the prima facie showing.  In order to do so, the employer must articulate a legitimate, non-discriminatory reason for the employment decision, and must also adduce credible reasons to show that the reasons advanced were the real reasons. Abramian, 432 Mass. at 116.  If it does so, the presumption created in the first instance falls away, and plaintiff is left with the burden of showing that the claimed illegal discrimination was the basis of the employer's decision.  The burden of proof at all times rests with the plaintiff.  Wheelock College v. Mass. Comm'n Against Discrim., 371 Mass. 130, 139 (1976).

      Plaintiffs cannot make out a prima facie case of race discrimination, because the evidence demonstrates they were properly subject to supervisory critique, the transfers out of the YVSF were not "materially" adverse, since the plaintiffs suffered no diminution pay or the opportunity to earn overtime (Facts, 108), and the change to their job duties was de minimus.  See Newell v. Celadon Security Services, et al., ___ F.Supp.2d. ___, 2006 WL 224196 (D.Mass. 2006)(Dein, Mag.J.).  "It is well established that a 'transfer or reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action.' " Id., citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002).  Although plaintiffs may have preferred working in the YVSF because they were free from the geographic limitations of a district assignment, they were not entitled to retain permanent tenure in the assignment; nor did their law enforcement duties change significantly enough to constitute an adverse

employment action. Plaintiffs are still law enforcement officers: though upon returning to the district stations they are in uniform, are again responsible for responding to 911 calls, and do not work with external agencies, they still perform the essential functions of police officers. "[S]ubjective feelings of disappointment and disillusionment" do not transform an otherwise legitimate job action into an adverse employment action. Newell, supra; MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996). Cf. Ortero Vazquez v. Am. Home Products Corp., 2005 WL 2001299 (D.P.R. 2005) at 14: "A reassignment may be considered a tangible employment action if the terms of the job change significantly."

Even if one assumes plaintiffs can meet their prima facie case, however, defendants' evidence overwhelmingly rebuts the presumption of discrimination. Supervision of subordinate police officers by superiors is a legitimate, non-discriminatory reason for the critiques raised by Bulman and Davin, and shared by Davin with Foley – the commander who ultimately made the decision to recommend the transfer.

The issues raised by Bulman and Davin were not insignificant. The issues raised by Bulman include Horne's off duty arrests (the record reflects three between March and December, 2000, see Facts, Ex. 11); control and access of informants, and plaintiffs' readiness in justifying their actions or conclusions. (Facts, 29, 30, 32). Davin echoed these concerns, and raised additional questions about plaintiffs' judgment in the field (after another officer asked not to be assigned to their car), readiness to provide information when executing search warrants, and Brown's tactical abilities. (Facts, 67, 68).

Both supervisors expressed frustration at having to pull information out of the plaintiffs. That plaintiffs may have entered information into the YVSF databases misses the point entirely. According to French, there are "subtleties" to intelligence gathering that are not captured by entering raw information into a database: "[a] lot of the intelligence report is just raw information or street sources, or it could be a confidential informant who is carded and has credibility …" (Facts, 34). Davin testified that when executing warrants, as the supervising officer he expected to get information from the investigating officers immediately and without prodding; but with the plaintiffs, "instead of just getting the bang, bang probable cause of what got us here, I'd have to ask more and more and more questions to pull out more and more information to hit the level [of probable cause] .. to go into the house …" Although Davin felt Horne was excellent at tracking fugitives, he also believed that he did not share the information about "how they found the guy." (Facts, 79, 83).

Plaintiffs' testimony illustrates that they did not understand their supervisors' concerns about open access to information. With regard to a unit wide investigation into a fugitive wanted for murder in Georgia, conducted jointly with the FBI, Brown testified that he created a handwritten document compiling information he gathered over some four months, which he may or may not have shared with Bulman; although he "believes" he gave this intelligence to Bulman, he bases this belief on the fact that "they eventually caught [the fugitive] with these people that we identified, so I guess they both got copies of it." At the same time, Brown testified that he was warned by Bulman not to share information with the FBI agent assigned to the case, and that accordingly he provided only "bits and pieces" of information. (Facts, 37). When

Bulman chastised the plaintiffs for failing to inform him that they had obtained information about a fugitive being sought by another squad; Brown's response was that they had entered this information into the unit database, and "if [he] had read the … database," Bulman would have known this himself. (Facts, 31)

A failure to supervise can be characterized as encouragement, condonation or acquiescence to unlawful practices, and thus can expose municipal policy makers and supervisors to liability. See, e.g., Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir.1995) (quoting Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir.1988)). Defendants acted in accordance with their official responsibilities in reviewing the plaintiffs' work patterns; and indeed, the "PAM" assessment was developed in order to require superior officers to review the performance of every officer under their command. (Facts, 69)

Plaintiffs can point to no evidence in the record to show that the defendants' stated reasons for the transfer were untrue, let alone that they were pretexts for discrimination. Plaintiffs cannot show that any other similarly situated employee was treated differently: all officers were reviewed at PAM; Foley identified other white and black officers who were selected for transfers due to supervisory doubts about the appropriateness of their remaining in the unit; other black officers raised complaints as plaintiffs did, and some stayed in the unit, and some were transferred over the course of time. No rational fact finder could conclude that the reasons given for plaintiffs' transfers were pretextual or a cover for discrimination.

Plaintiffs also cannot show retaliation was the motive for their transfers. Similar to the analysis of the First Amendment claims, supra, Title VII requires a plaintiff

to show a causal link between the protected activity and the allegedly adverse action. Benoit, supra;  Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994).   As already noted, a year elapsed between the complaints plaintiffs raised about racial issues within the YVSF and their transfer out of the unit.   The isolated instances to which they refer to in order to buttress their claim of continuous protected activity (see Facts at 70 – 76) fall far short of the quantum of proof necessary to defeat defendants' well-supported motion.

Plaintiffs allege that Bulman and Davin conspired to deprive them of a right or privilege protected by law, on account of a racial or retaliatory bias.  For the same reasons that plaintiffs fail to satisfy the McDonnell Douglas test, they fail to satisfy the requirements of 42 U.S.C. § 1985.  See Griffin v. Brechenridge, 403 U.S. 88, 102 (1971) (requiring "some racial or … invidiously discriminatory animus").

For these reasons, Bulman and Davin are entitled to summary judgment on Counts II and IV of the plaintiffs' complaint.

      **C.**    **Interference With Contractual Relations**
            **(Count III:  42 U.S.C. § 1981, G.L. c. 93 § 102)**
            **(Count VI:  Intentional Interference With Advantageous**
            **Business Relationship and Prospective Advantage)**

To prove a 42 U.S.C. § 1981 violation, plaintiffs must show: (1) purposeful discrimination; (2) based on race; (3) in the making or enforcing of a contract. Goodman v. President and Trustees of Bowdoin College, 135 F.Supp.2d 40, 48 (D.Me.2001).  Plaintiffs fail to show discrimination based on race; further, plaintiffs fail to show that their contract with the City of Boston was interfered with in any respect. Assignment of police officers is at the discretion of the Police Commissioner, who retains the managerial right to determine the deployment of personnel.  As plaintiffs had no contractual right to a specific assignment, their claim under 42 U.S.C. § 1981 must fail.

14

Massachusetts General Laws chapter 93, § 102 grants "all persons within the commonwealth, regardless of … race, color … the same rights enjoyed by white male citizens, to make and enforce contracts…" Because "Chapter 151B is the exclusive state law remedy for employment discrimination complaints," Woods v. Friction Materials, Inc., 30 F.3d 255, 264 (1st Cir. 1994), defendants are entitled to summary judgment on Count III.

In order to establish a claim for intentional interference with advantageous business relationships, a plaintiff must show: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship [or contract]; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815, 551 N.E.2d 20 (1990); Elm Medical Laboratory, Inc. v. RKO Gen., Inc., 403 Mass. 779, 787, 532 N.E.2d 675 (1989). The "essence of the tort is damage to a business relationship or contemplated contract of economic benefit." Ratner v. Noble, 35 Mass.App.Ct. 137, 138, 617 N.E.2d 649 (1993).

It is well established that a defendant cannot interfere with its own contractual or advantageous relationship. See, *e.g.,* Appley v. Locke, 396 Mass. 540, 543, 487 N.E.2d 501 (1986); Roseman v. Orion Research, Inc., 394 Mass. 311, 314, 475 N.E.2d 398 (1985); Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663 n. 3, 429 N.E.2d 21 (1981); St. Louis v. Baystate Medical Center, Inc., 30 Mass.App.Ct. 393, 404, 568 N.E.2d 1181 (1991). Additionally, an employee may be so "closely identified" with the employer that he should not be treated as a third person capable of "tortious interference."

15

Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 50, 565 N.E.2d 1219 (1991), review denied, 409 Mass. 1104. "A claim of tort liability for intentional interference with a contract is not made out unless the interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. The defendant's liability may arise from improper motives or from the use of improper means.... " Id., citations omitted.

For the reasons already argued, defendants' supervisory critiques of the plaintiffs' job performance were not "improper," nor is there evidence that any wrongful motive underlay those critiques. As supervisors, defendants are representatives of the Boston Police Department, and are thus so closely associated with the management of the Department that they should not be considered "third parties" for purposes of this common law tort. Finally, there is no competent evidence to show that the plaintiffs suffered any injury to a business relationship, or suffered any economic injury. Ratner, 35 Mass.App.Ct. at 38. Instead, the evidence shows that plaintiffs had more opportunity to earn additional overtime income at the districts than they did at the YVSF, not less[4]. Summary judgment should therefore issue for the defendants on Count VI.

### D.     Defendants Are Entitled To Qualified Immunity

Plaintiffs have sued Bulman and Davin in their personal capacities. "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." Rogan v. Menino, 175 F.3d 75, 77

---

[4] Plaintiffs allege that their earnings diminished after leaving the YVSF. However, overtime in the BPD is available on a voluntary basis, consistent with contractual requirements. The defendants have demonstrated that more overtime hours were available to officers in districts B2 and C6 than to officers in the YVSF for the period August 1, 1999 – June 30, 2001. (Facts, 108). Plaintiffs have not alleged that they were prohibited from working overtime hours in the districts. If they chose not to do so, that declination cannot be the basis of an economic injury inflicted by the defendants.

16

(1st Cir. 1999), citing Malley v. Briggs, 475 U.S. 335, 341 (1986).  As a result, the Supreme Court has established a three-step inquiry for a reviewing court to determine qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court must first decide whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right.  If no constitutional right would have been implicated, there is no necessity for further inquiry.  Id.  Only if a violation of a constitutional right is established does the court proceed to answer the two remaining questions:  was the right clearly established when the plaintiff suffered the constitutional injury, and if so, would a reasonable official similarly situated to the defendant understand that the challenged conduct contravened clearly established law?  Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003).

Even if plaintiffs could show that Bulman or Davin had any responsibility for their transfers, both Bulman and Davin are entitled to qualified immunity because the constitutional right of a police officer to be protected against criticism by a superior officer, even when that critique contributes to a decision to transfer the subordinate officer, is not a clearly established right; and because no competent evidence has been adduced to show that either defendant harbored an illegal motive.  Defendants are therefore entitled to qualified immunity on all counts of the complaint.

### III.   CONCLUSION

For the reasons stated herein, defendants Eric Bulman and John Davin respectfully request that the Court grant summary judgment on their behalf on all counts of the complaint.  Defendants further request that the Court rule they are entitled to

qualified immunity for all supervisory actions taken in their role as Sergeants in the Youth Violence Strike Force.

        RESPECTFULLY SUBMITTED,
        ERIC BULMAN and JOHN DAVIN
        By their attorneys,


        __/s/ Mary Jo Harris _____
        Special Assistant Corporation Counsel
        BBO # 561484
        Morgan, Brown & Joy, LLP
        200 State Street
        Boston, MA 02109
        (617) 523-6666


Dated: April 4, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), **including counsel for Plaintiff, Stephen A. Roach, Roach & Wise, LLP, 31 State Street, Boston, MA 02109** along with paper copies by first class mail, return receipt requested, as of this 4th day of April, 2006.

        /s/ Mary Jo Harris____
        Mary Jo Harris