UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10718-RGS

STEVEN HORNE and )
RONALD BROWN, )
            )
    PLAINTIFFS )
            )
        v.  )
            )
CITY OF BOSTON, )
SGT. ERIC BULMAN, and )
SGT. JOHN DAVIN, )
            )
    DEFENDANTS )

## DECLARATION OF RONALD BROWN

I, Ronald Brown, hereby declare as follows:

1. I was employed as a uniformed Police Officer for the Boston Police Department assigned to the Youth Violence Strike Force ("YVSF") from August 11, 1999 until April 2, 2001, when I was officiously transferred. I am an African American. I am a Plaintiff in this case. As such, I have personal knowledge of the matters set forth in this Declaration.

2. During the time I served in the YVSF I never made an off duty arrest.

3. After Plaintiff Officer Steven Horne and I complained to Lt. Gary French and Sgt. Eric Bulman in February 2000 about what

1

we considered problems of racism within the YVSF, as more fully described in my Answers to Interrogatories and in my deposition testimony, I continued to complain about problems of race discrimination, until I was transferred, to Sgt. John Davin, who succeeded Sgt. Bulman as my immediate supervisor. My complaints to Sgt. Davin included the differences I observed in how white YVSF officers spoke to, questioned and otherwise treated black citizens as compared to white citizens, the continued presence of nearly entirely black faces on the wanted posters on the YVSF bulletin board and, starting in late 2000 or early 2001 until we were transferred, Sgt. Davin's insistence of a quota of 20 daily Field Interrogation Observations ("FIO") of citizens. I objected to Davin about the FIO's because Officer Horne and I witnessed white YVSF officers unnecessarily stopping young black males for FIOs.

4. Pages 422 to 523 of Exhibit 26 to the Deposition of Lt. Gary French are examples of warrant routing system records Officer Horne and I created and used to advise others in the YVSF of warrants that the Court had issued and on which we were working. It was a tracking communication device for all officers to use. We created this system after Suffolk County Assistant District Attorney, Mary Kelly, told Lt. Foley that Horne and Brown had done such a good job developing and documenting

2

information about fugitives that the YVSF should establish records in the manner the Plaintiff were doing for the use of the DA. Accordingly, the YVSF established for the DA and the YVSF the City - Wide Warrant Routing System (Fugitive Tracking System) now in use.

5. After Officer Horne and I complained to Lt. French about what we considered racist statements and actions by white officers of the day tour, but before we were transferred effective April 2, 2001, a number of white officers were transferred out of the YVSF but they were generally not the officers who I considered were the main problem with regard to the issues we raised.

6. Officer Horne and I, as well as other officers, received commendations from the Boston Police Department for the tracking of Shawn Taylor, AKA Spayne Tyler, AKS Shawn Tate.

7. I have reviewed paragraph 5 of the "Defendants' Concise Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment Pursuant to Rule 56.1" regarding the criminal charges brought against me after Officer Horne and I complained about racism in the YVSF and were transferred. The statements in paragraph 5 are untrue. First, I was not in possession of a firearm at the incident at issue. Second, I was not convicted of multiple felony offenses. I was charged with

five offenses and convicted of one misdemeanor and one felony. The matters are under appeal. Third, the victims initiated an attack on me. A criminal complaint was issued against those victims for attacking me. The Suffolk District Attorney's office worked with Boston Police Department officers in pressing the case against me.

8. Former YVSF Officer Grant Callender and I were friends. We were classmates in the Boston Police Academy starting in June 1997, and have been friends since that time. He was friends with my family members. I encouraged him to join the YVSF and to send a letter to Lt. French to apply for a position. We socialized together outside of work. At no time did Officer Callender tell me that he had a problem working me, or the way I worked, when I was with the YVSF. Officer Callender never told me that he had a problem with the way Officer Horne did his job. Officer Callender and I worked together on many cases. Sgt. Davin me assigned to train Officer Callender in YVSF fugitive tracking procedures and in other anti-crime investigative techniques when Officer Callender first joined the YVSF. We often continued to ride together as the TK13 call unit until I was transferred effective April 2, 2001. I also continued to work with Officer Horne as the TK15 unit and sometimes as the combined TK13 and TK15 unit with both Officers Horne and Callender as well as Officer Eric

4

Hardin. Sgt. Davin assigned Officer Horne to train Officer Hardin in YVSF fugitive tracking procedures and in other anti-crime investigative techniques when Officer Hardin joined the YVSF.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct this <u>25th</u> day of August 2006.

_____
Ronald Brown