UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN HORNE, <br> RONALD BROWN <br><br>     Plaintiffs <br> v. <br><br> CITY OF BOSTON, <br> SERGEANT ERIC BULMAN, and <br> SERGEANT JOHN DAVIN, <br><br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 04-10718-RGS |

**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' STATEMENT OF DISPUTED AND UNDISPUTED FACTS, FILED IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants hereby move to strike the Plaintiffs' Statement of Disputed and Undisputed Facts filed in opposition to the Defendants' Motion for Summary Judgment, on the grounds that the Statement does not comply with the requirements of Local Rule 56.1. The Plaintiffs' submission largely, indeed almost entirely, consists of references to allegations that are without adequate support at summary judgment, statements of opinion (such as plaintiffs' disbelief of City witnesses' testimony – without admissible record evidence supporting their disbelief), misstates the record, contains multiple hearsay allegations, and in sum, at 90 pages of repetitive such assertions, fails entirely to comport with the requirements of Local Rule 56.1 that a party resisting summary judgment provide a <u>concise</u> statement of material facts <u>of record</u> as to which a genuine dispute exists.

Because of these deficiencies, Defendants now move to strike the Plaintiffs' Statement of Facts, and request that the Court deem Defendants' supported Statement of Facts as admitted.  See Stonkus v. City of Brockton Sch'l District, 322 F.3d 97, 102 (1st Cir. 2003) (holding that the court may deem facts admitted when the summary judgment opponent fails to properly convert a supported Local Rule 56.1 Statement); Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (holding that it is incumbent upon the party resisting summary judgment to provide a statement of facts, admissible on the record, as to which there exists a genuine issue of fact); Rodio v. R.J. Reynolds Tobacco Co., 416 F.Supp.2d 224 (Dein, J.) (noting that under Local Rule 56.1, trial court has the discretion to deem admitted any supported allegation of fact as to which no competent dispute is made).

Defendants also move to strike the averments in Plaintiffs' SOF to the extent they do not comport with Fed.R.Civ.P. Rule 56(e) (allowing a party to oppose summary judgment by use of affidavits based upon personal knowledge and which set forth facts as would be admissible in evidence).  See Garside v. Osco Drug, Inc., 895 F.2d 46, 49-51 (1st Cir. 1990) (only matters that would be admissible at trial may be considered in opposition to a motion for summary judgment).

Defendants specifically move to strike Plaintiffs' assertions, as follows:

1. Affidavits of Officer Jones, Israel to the extent they contain conclusory, hearsay assertions:
   a. Jones affidavit at ¶ 7, that officers transferred out of the unit were "generally not the officers who I, and other minority officers, considered were the main problem with regard to racism;"
   b. Allegations that "there was an A team – B team mentality…" (Jones Affidavit at ¶ 10, Israel Affidavit at ¶ 3), and as incorporated in Ps' SOF at ¶¶ 38)

  c. Allegations that after Horne and Brown complained, "the morale of the minority officers worsened and the attitude of white officers toward Horne and Brown was that they were outcasts…" ( Israel Affidavit at ¶ 4 )

  d. Allegations that the night shift was "commonly known as the "Soul Patrol" (Jones Affidavit at ¶ 2 and Ps' SOF at ¶¶ 48(c) )

  e. Jones affidavit at ¶ 7, "one white officer told me …" and ¶ 9, "that superior officer told us that Sgt. Bulman was "too valuable" to the unit to transfer out."

2. Affidavit of Jones, at ¶ 2, that Defendant Bulman told him that he did not know "any aggressive black officers," as the allegation is bereft of any information regarding when the allegation was made, or of any fact that would tie the alleged statement to any fact relevant to the Plaintiffs' complaint [Ps' SOF at ¶ 48(d)];

3. All allegations that purport to cite the conclusory opinions of plaintiffs and other officers:

  a. Allegations of "racist patterns," see Plaintiffs' Statement of Facts [herafter, Ps' SOF] at ¶¶ 7;

  b. All allegations that Defendants' were in a "clique" of white officers [Ps' SOF at ¶¶ 32]

  c. All allegations that "white officers" did not want to engage in programs established in the YVSF [Ps' SOF at ¶¶ 45]

  d. All allegations that cruiser assignments were "segregated" and that supervisors "passed off" the alleged practice as allowing officers to select partners (and thus implicitly were part of a deliberate pattern of discrimination), as Plaintiffs do not refute that officers were, <u>in fact</u>, permitted to choose their partners and were not assigned by race by supervisors;  [Ps' SOF at ¶¶ 48(a)]

  e. All allegations that requesting identifying information and/or running CORI checks and/or creating FIO reports (field interrogation reports) constitute illegal action [see Ps' SOF at ¶¶ 48(i), 61, 71, 77]

  f. All allegations that the meetings conveyed on or after February 2000 were done to "appease" plaintiffs;  [Ps' SOF at ¶¶ 52];

  g. All allegations that Plaintiffs' doubted the "sincerity" of the City's actions, or were otherwise dissatisfied with the Defendants' efforts to resolve their complaints [Ps' SOF at ¶¶ 55 – 60;  64; 71, 77],

  h. All allegations that plaintiffs were "marked men" and/or "outcasts" after raising concerns about racism within the unit [Ps' SOF at ¶¶ 66, 68, 69],

  i. All allegations that Defendants' "demeanor" became "continuously hostile," [Ps' SOF at ¶ 77, 78],

  j. All allegations that plaintiffs were the <u>only</u> officers who were reviewed per the Department's Personnel Analysis Meeting ("PAM") or that equate PAM with "personnel evaluations." [Ps' SOF at ¶ 79, 91, 92],

  k. All allegations that "admit" the substance of Defendants' testimony, but "deny the truth" of those allegations.  [Ps' SOF at ¶¶ 79 – 86],

      l.      All allegations that officers "socialize," are "friends outside of work." [Ps' SOF at ¶ 87 – 89];

      m.     Allegations that admit record facts, but deny the "implications," such as Ps' SOF at ¶ 94 (admitting that they were transferred along with two other black and three white officers).

4. All hearsay statements:
   a. All allegations that an unnamed black state trooper told Plaintiffs to "get used to" negative treatment [Ps' SOF at ¶¶ 19, 20, 21, 29, 39, 48(b),]
   b. All allegations that a white officer (variously described as a "white officer" and identified as Officer Michelle Williams) was assigned to work with other white officers who protested her working with Plaintiffs [Ps' SOF at ¶¶ 20, 29, 48(a), 78]
   c. All allegations that Officers Langa and McCarthy were not told they had to "prove themselves" to remain in the YVSF [Ps' SOF at ¶¶ 22]
   d. All allegations that Officer Gerard Bailey "was known as the Grand Wizard" and "said he did not want Brown in the YVSF" [Ps' SOF at ¶¶ 22, 39, 45, 48(g)]
   e. All allegations that an Assistant District Attorney requested that the YVSF create a database based on Plaintiffs' work [Ps' SOF at ¶¶ 35]
   f. All allegations concerning statements made by unidentified white officers that black suspects were "monkeys" or "porch monkeys" [Ps' SOF at ¶ 48(g)]
   g. All allegations that white officers became hostile to plaintiffs "as instigators, outcasts, and dogs," [Ps' SOF at ¶ 77]

5. All allegations without record support:
   a. All allegations that Defendants' "routinely worked with white state troopers," an allegation that is not supported (although an incorrect record cite to the deposition of Paul Joyce is referenced); [Ps' SOF at ¶¶ 48(b)]
   b. All allegations that transfers made in February 2000 were made before, and not after, concerns about tensions in the YVSF were raised [Ps' SOF at ¶ 62];
   c. All allegations that the Department's Personnel Analysis Meeting ("PAM") was performed <u>only</u> as an analysis of Plaintiffs, as this allegation is directly in conflict with the record; plaintiffs' allegations that PAM "only" involved discussion of those items highlighted. [Ps' SOF at ¶¶ 81, 82]
   d. All allegations that Foley claimed to have "lost" the file within which he kept notes of officers' performance, as misstating Foley's deposition testimony that the file was discarded when the transfer order issued. [Ps' SOF at ¶ 93; Foley's deposition testimony at 187].

      e.      All allegations that Horne was involved in only one off duty arrest, where the record demonstrates he was involved in three such off duty arrests. [Ps' SOF at ¶¶ 32, 95; <u>compare</u> Defendants' Exhibit 11, police reports].

6.      All allegations concerning the origin and racial composition of the YVSF from 1993 – 1996, as such is four to seven years <u>before</u> any fact at issue in the instant matter and standing alone, is irrelevant to the issues in this case.

                                RESPECTFULLY SUBMITTED,
                                ERIC BULMAN and JOHN DAVIN
                                By their attorneys,

                                __/s/ Mary Jo Harris _____
                                Special Assistant Corporation Counsel
                                BBO # 561484
                                Morgan, Brown & Joy, LLP
                                200 State Street
                                Boston, MA 02109
                                (617) 523-6666

Dated: November 8, 2006