UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN HORNE, ) | |
| RONALD BROWN ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | |
| ) | |
| CITY OF BOSTON, ) | C.A. No. 04-10718-RGS |
| SERGEANT ERIC BULMAN, and ) | |
| SERGEANT JOHN DAVIN, ) | |
| ) | **LEAVE TO FILE REPLY** |
| Defendants ) | **GRANTED NOV. 14, 2006** |

### DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants hereby reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and in so doing, incorporate their Motion to Strike Plaintiffs' Statement of Material Facts at Issue. At its essence, Plaintiffs' submission relies on inadmissible materials to rebut Defendants' Motion for Summary Judgment, misstates the law and the facts in the record, and wholly fails to comport with the requirements of Rule 56(e). Plaintiffs' lack of evidence in support of their claims mandates that Summary Judgment enter for the Defendants.

Defendants specifically reply to the Plaintiffs' arguments, as follows[1]:

**1.      Plaintiffs Fail To Establish That They Suffered An Adverse Action**

Plaintiffs are police officers who were transferred to neighborhood district stations after approximately eighteen (18) months in the YVSF. Plaintiffs protest their transfer from the YVSF and claim the transfer was retaliatory, thus actionable under both

---

[1] Defendants do not repeat the arguments made in their original motion, but rest on the arguments made in their original Memorandum of Law.

state and federal law. However, aside from their indignation at being moved from a city-wide unit to district patrol assignments, they cannot identify any materially adverse condition of employment. In the absence of a materially adverse job action, their complaint fails as a matter of law.

Plaintiffs cite <u>Burlington Northern & Santa Fe R.R. Co. v. White</u>, 126 S.Ct. 2405 (2006) to support their claim that the transfer was an adverse job action, but they misapprehend its holding. <u>Burlington Northern</u> does not conclude that a lateral transfer is an adverse employment action; rather, the Supreme Court outlined an objective, "reasonable person" test to assess whether the challenged action "would have been materially adverse to a reasonable employee…" in order to "separate significant from trivial harms." <u>Id.</u>, 126 S.Ct. 2405, 2415, 2417. In <u>Burlington Northern</u>, transfer to a position that was more arduous, was physically dirtier, and which required lesser qualifications was, objectively, "materially adverse."

Plaintiffs do not present any evidence from which one could conclude that transfer from the YVSF to neighborhood district stations is "materially adverse." There is no evidence in the record that the work in the districts was more difficult, more dangerous, consisted of less desirable hours, or otherwise interfered with plaintiffs' opportunities for advancement within the Department. Further, Defendants have shown that plaintiffs lost no income from the transfer, and actually had the opportunity to earn more money in the district assignments. In short, other than alleging that the YVSF is "elite" and provides the opportunity to work with outside agencies in plain clothes, plaintiffs fail to advance any evidence to support an objective finding that the transfer from the unit was "materially adverse."

Defendants submit that <u>Burlington Northern</u> and its objective test control this issue, and that even if other courts had held that a lateral transfer, alone, is an adverse job

action, those cases could not control following the Supreme Court's recent decision. However, none of the cases cited by plaintiffs support their contention that a lateral transfer alone constitutes an adverse employment action. In <u>DelSignore v. DeCenzo</u>, 767 F.Supp. 423 (D.RI 1991), cited by plaintiffs for support, the Court found a due process claim where plaintiff was demoted from a civil service sergeant's position in which he held a property interest without notice or an opportunity to be heard. No such property right exists here. Plaintiffs did not test for the position in the YVSF, and had no expectation that they would hold those assignments for any period of time. Although plaintiffs baldly assert that a property right to continued assignment to the YVSF exists, there is no evidence or law that supports that contention. None of the other cases plaintiffs cite speak to property rights at all. <u>See</u> Plaintiffs' Memorandum at p. 24.

In <u>Forsyth v. City of Dallas</u>, 91 F.3d 769 (5th Cir. 1996), the Court found a transfer materially adverse where plaintiffs were transferred to positions that offered less advantageous hours and where one plaintiff was placed on a "no hire" status. No such material changes are at issue here, and as <u>Forsyth</u> counsels, subjective feelings of disappointment and dissatisfaction do not an adverse employment action make. <u>Id.</u>, 91 F.3d. 769, 774. Plaintiffs' remaining cases are also readily distinguishable: <u>Andujar v. Nortel Networks, Inc.</u>, 400 F. Supp.2d 306, 329 (D.Mass.2005) lists "<u>disadvantageous</u> transfers" as actionable. <u>Marrero v. Goya of P.R., Inc.</u> 304 F.3d 7 (1st Cir. 2002) actually stands for the <u>opposite</u> position than that for which plaintiffs cite it: summary judgment was granted where the lateral transfer did not constitute an adverse job action. "It is not enough that Marrero felt stigmatized and punished by the transfer. A more tangible change in duties or working conditions is needed before we can conclude that the transfer was, in fact, a demotion." <u>Id.</u>, 304 F.3d at 25.

3

As Defendants' Memorandum of Law filed in this case demonstrates, a number of officers – black, white, Hispanic, Asian – were transferred in and out of the YVSF during the time plaintiffs were assigned to the unit. Transfers are a part of life in a large urban police department. There is no authority for the extraordinary proposition plaintiffs make: that a subordinate police officer has the right to demand, or expect, tenure in a position of his preference. Since transfer to district stations is not an adverse job action, plaintiffs cannot make out a prima facie case of retaliation under any theory pled. Accordingly, summary judgment should enter for the defendants.

**2. Plaintiffs Have Not Established Causation Between Their Protected Activity, and Their Transfer From The YVSF**

In order to prove a claim of retaliation, plaintiffs must demonstrate a causal link between their protected activity, and the adverse action taken. Even if the transfers were considered adverse employment actions, which defendants deny, plaintiffs fail to adduce evidence at summary judgment to show that the reason for the transfer was their protected speech.

Retaliation can be shown by either (1) temporal proximity between the protected conduct and the adverse action, and/or (2) evidence of discrimination occurring between the time of the activity and adverse action. Che v. MBTA, 342 F.3d. 31 (1st Cir. 2003). As defendants argue in their Memorandum of Law, Plaintiffs can show neither.

In Che v. MBTA, 342 F.3d 31, 38 (1st Cir. 2003), the First Circuit held that "temporal proximity is but one way of proving retaliation," and in the absence of proximity, "evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection." See also, e.g., Murphy v. Cruz, 52 Mass.App.Ct. 314, 318 (2001)

("…the chronology of events … gives rise to a cognizable claim of retaliation based upon the temporal proximity of the disciplinary proceedings to [the protected activity].")

The plaintiffs retain their burden of proving causation: that the reasons for their transfers – undertaken some thirteen months after they complained about the racial climate in the YVSF – were in retaliation for their protected activity. This evidence that is wholly absent from plaintiffs' submission. The absence of temporality, coupled with the lack of evidence of retaliatory motive, further undermines their claims.

**3.     Plaintiffs' Failure To Adduce Competent Evidence Is Fatal To Their Claims**

Plaintiffs attempt to paint a portrait of a unit plagued by racial division where they were subjected to discrimination and retaliation – but do so only on the basis of anonymous, apocryphal and inflammatory tidbits that are wholly without record support. Defendants specifically point to these repeated allegations: an anonymous black trooper told plaintiffs to "get used to" unequal treatment; blacks and whites were divided into "A-Team" and "B-Teams;" the night unit was the "Soul Patrol"; racist terms were routinely used by unnamed, "white" officers; one sergeant was referred to (either by himself or another anonymous individual) as the "Grand Wizard" and that plaintiffs were subjected to "ominous looks" and unspecified "hostility."

Parsing through the allegations contained in plaintiffs' argument it is abundantly clear that, subsequent to raising complaints about the racial climate in the YVSF, they were not subjected to any discriminatory treatment by either Bulman or Davin. Plaintiffs claim to have become "marked men," see Plaintiffs' Memorandum of Law at p. 7, but do not provide any competent evidence to buttress this impression. They complain that Davin's assessment of their performance at the PAM and in discussions with Lt. Foley is evidence of bias, but as previously argued, even if plaintiffs think Davin unfairly

5

criticized them, they have not produced anything to show that Davin was motivated by racial animus or retaliatory purpose. Their assertions that they were the only officers reviewed during the PAM process is flatly contradicted by the records and the testimony in the record. In short, plaintiffs have not brought forward any competent evidence of discriminatory treatment.

**4.        Summary Judgment Is Appropriate Where Plaintiffs Fail To Present Competent Evidence In Opposition To Defendants' Motion**

Plaintiffs cite to <u>Bruner v. Stone & Webster Eng. Co.</u>, 413 Mass. 698 (1992) for the proposition that summary judgment is "disfavored" in discrimination cases. <u>Bruner</u> actually affirmed the granting of summary judgment, holding that where the defendant had shown, by evidence <u>competent for admission at trial</u>, that plaintiff failed to prove an element of her case, summary judgment was appropriate. Plaintiffs must show, by admissible evidence, some facts that link an adverse employment action to their protected conduct. <u>Guilloty Perez v. Pierluisi</u>, 339 F.3d 43, 56 (1st Cir.2003). Even assuming that a lateral transfer is an adverse action (something defendants do not concede), Plaintiffs have not produced any competent evidence (direct or circumstantial) that links their complaints in February 2000 to their transfer out of the YVSF in April 2001. Here, where Plaintiffs' only evidence is essentially either their own testimony of subjective displeasure, coupled with rank hearsay, summary judgment is appropriate.

The Court should conclude, from this wholly inadequate pleading, that Plaintiffs cannot make out their prima facie case. This matter was filed in 2004, and Plaintiffs have had ample opportunity to develop admissible evidence in support of their claims. This they have utterly failed to do, instead relying upon innuendo and inappropriate hearsay to persuade this Court to allow this case to go before a jury.

Defendants respectfully request that the Court disregard all proffers that are without record support, and enter judgment for them on all counts of the plaintiffs' complaint.

RESPECTFULLY SUBMITTED,
ERIC BULMAN and JOHN DAVIN
By their attorneys,


__/s/ Mary Jo Harris _____
Special Assistant Corporation Counsel
BBO # 561484
Morgan, Brown & Joy, LLP
200 State Street
Boston, MA 02109
(617) 523-6666


Dated: November 16, 2006