UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10718-RGS

| | | |
|---|---|---|
| STEVEN HORNE and<br>RONALD BROWN, | ) | |
| | ) | |
| PLAINTIFFS | ) | **PLAINTIFFS RONALD BROWN and STEVEN** |
| v. | ) | **HORNE'S OPPOSITION TO DEFENDANTS'** |
| | ) | **MOTION TO STRIKE PLAINTIFFS'** |
| CITY OF BOSTON, | ) | **STATEMENT OF DISPUTED AND UNDISPUTED** |
| SGT. ERIC BULMAN, and | ) | **FACTS FILED IN OPPOSITION TO DEFENDANTS'** |
| SGT. JOHN DAVIN, | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| DEFENDANTS | ) | |
| | ) | |

Plaintiffs Steven Horne ("Horne") and Robert Brown ("Brown") oppose the Defendants'

Motion to Strike Plaintiffs' Statement of Disputed and Undisputed Facts Filed in Support of

Their Opposition to Defendants' Motion for Summary Judgment as follows:

> 1. **The Declarations of Officer Craig Jones and former Officer Kenneth Israel**
>    **are admissible in their totality.**

Without any analysis, specific citation to case law or Rules of Evidence, or discussion,

the Defendants seek to exclude certain portions of the Declarations[1] of Officer Craig Jones and

from Officer Kenneth Israel on the grounds that selected statements "contain conclusory, hearsay

assertions." (**Defense Motion at unnumbered pp. 2-3).**

   a.   First, the language the Defendants cite is <u>not</u> contained in Paragraph 7 of Jones'

Declaration. The language to which the Defendants object is contained in Paragraph 9. Second,

the language is not conclusory or hearsay. It is based on Jones' personal knowledge of over ten

---

[1]       The "Affidavits" to which Defendants refer are Declarations signed and filed
          pursuant to 28 U.S.C. §1746.

1

(10) years in the YVSF working with Defendants Eric Bulman ("Bulman") and John Davin ("Davin"), other white officers, and his fellow black officers. Officer Jones' statement is based, as he describes throughout his six page Declaration, from his observations of the behavior, racist and otherwise, of the white officers and Bulman and Davin. Officer Jones observed the segregated cruisers, the racist T-shirt, the attitudes of the whites and the blacks, the statements of other black officers to him of the fear of reprisals if they complain **(Jones Decl. ¶5)**, and the comment he and Officer Greg Brown made to Lt. Foley about Bulman **(Jones Decl. ¶9).** To the extent that the statement to which the Defendants object contains hearsay, it fits within any number of hearsay exceptions under Fed.R.Evid. 803(1),(2),(3), (21); see also Mutual Life Ins. Co. v. Hillman, 145 U.S. 285, 295 (1982).

      b. For the reasons set forth in Section 1(a) above, the statements of Officers Jones and Ken Israel as to the "A team-B team mentality" are grounded, as they state throughout their Declarations, on their years with the YVSF (Jones - ten years). Israel served in the YVSF for **twenty** (20) years. **(Israel Decl. ¶1).** It is based on their conversations with others in the YVSF, especially minority officers. Accordingly, they are competent to relate the behavior they observed and talked about with other minority officers, the segregation and all white cliques they observed, and the choice fugitive assignments going to the white officers, as an "A team-B team mentality." This is not hearsay. It is what they saw and labeled it as a group.

      c. Again, Officer Israel's statement about the morale of the minority officers is what he himself felt and observed in others. It is either not hearsay or fits easily within one of the exceptions of Fed.R.Evid. 803(1),(2),(3).

      d. The minority officers in the night shift called themselves the "Soul Patrol." This is what Officer Jones observed and called it himself. This is not hearsay or conclusory. It is a fact.

e. Lt. Foley's statement to Officers Jones and Greg Brown that "Bulman was too valuable to the unit to transfer out" (**Jones Decl. ¶9**) is **not** hearsay. It is not being offered for the truth that Bulman is too valuable to transfer out. Rather, is being offered to show the attitude of the YVSF commanders and superiors about Bulman, despite minority officers' complaints about Bulman. See Fed.R.Evid. 801. Even if it was hearsay, it is admissible to show the attitude of the YVSF about the complaints about Bulman. Fed.R.Evid. 803(3). Also, it is an admission about Bulman, i.e. even though he is racist he is too valuable to transfer. Fed.R.Evid. 8-1(d)(2).

**2.    Bulman's statement to Officer Jones and Officer Greg Brown that he, Bulman, "did not know any aggressive black officers" is admissible.**

Simply because Officer Jones does not state precisely "when" Bulman made the statement to Jones does not make it inadmissible. This case is about racism and the racist attitudes and actions of Bulman and others. It constitutes an admission. It is also direct evidence of Bulman's attitudes toward minority officers as, as such, is admissible not for its truth but for Bulman's state of mind and emotions, which is central to this case. See Fed.R.Evid. 803(3). Accordingly, it is also highly relevant to this matter.

**3.    The statements the Defendants seek to exclude are admissible and are not "conclusory opinions."**

Again, without any analysis, discussion or citation to any Rule of Evidence or case law, the Defendants simply list a string of statements in the Plaintiffs Facts that the Defendants don't like and ask the Court to strike them on the bald premise that they are "conclusory opinions."

a. Bulman and Davin admitted to much of the behavior to which the Plaintiffs objected such as, for example, segregated cruisers. Brown explained in some detail the race based actions of Bulman and Davin. To call them "racist" patterns is based on the facts in the record cited. **P**

EX. 2 at 292-301 (**Brown Dep. 292-301**); P EX. 6 at 57-58, 91, 98 (**Bulman Dep. 57-58, 91, 98**); P EX. 5 at 45-48 (**Davin Dep. 45-48**); P EX. 22 at Ans. 6 (**Ex. 18 Ans. 6**).

b. The term "clique" found in a footnote in Plaintiffs' Facts 32, is well supported by the facts and the record as a direct observation. <u>See</u> **P EX. 8 at 201-208 (Foley Dep. 201-208); P EX. 24 (Foley Exs. 40); P EX. 15 (Foley Exs. 42); P EX. 27 (Israel Decl.).** It has also essentially been discussed above in Section 1(b) above. To the extent it is an "opinion" of a lay person, it is well within the scope of Fed.R.Evid. 701.

c. This statement is not an opinion. It was a direct observation Horne, and others, made based on statements by white officers resisting Lt. French's directive that they participate in programs at Dorchester High School and elsewhere. It was the final straw that caused Horne and Brown to finally voice their complaints to Lt. French. **Plaintiff Facts 45 & 48.**

d. The term "passing off" is appropriate in that Davin, Bulman, and even their YVSF superiors, Lt. French and Lt. Foley, stated that the practice of racially segregated cruisers as something that the officers themselves choose. **P EX. 8 at 420-423 (Foley Dep. 420-423).** Lt. French, however, testified that Bulman and Davin had authority to assign officers to cruisers. **P EX. 7 at 87-88 (French Dep. 87-88).** In fact, white Officers McCarthy and Langa, who joined the YVSF when Brown, Horne and Brito arrived, of course rode together but Bulman placed them with the experienced white teams for training. **P EX. 1 at 39-48 (Horne Dep. 39-48).** It constitutes an admission and, even if it is an opinion, is based on the observations of the witnesses. Fed.R.Evid. 701 and 801(d)(2). It also is not hearsay; it is a fact. Fed.R.Evid. 801(c)).

e. The Plaintiffs' Facts did <u>not</u> state that the CORI checks were "illegal". The Defendants misstate the record. The Plaintiffs did state, however, that they observed CORI checks were used to excess on minority citizens whom they observed white officers abuse.

4

Moreover, the Plaintiffs did <u>not</u> discuss CORI in Facts Paragraphs 61, 71, 77, as the Defendants state, but only in Facts Paragraph 48i.

    f.  The facts support the use of the word "appease" as the rationally based perceptions and emotions of the Plaintiffs. Fed.R.Evid. 701 and 803((3).

    g.  The term "sincerity" is a rebuttal in Plaintiffs Facts 71 to Defendants' Facts 71 which stated that Foley's actions were not "intentional", a legal conclusion and Foley's state of mind. It is fair, therefore, to rebut it in kind. It is furthermore admissible under Fed.R.Evid. 701 and 803(3). As to the Plaintiffs' dissatisfaction, they do <u>not</u> use that term in the Facts to which the Defendants cite. Even if they did,  once again, their sense and emotions as to the insincere acts of the Defendants is based on their observations of the actions of the Defendants and is admissible under   Fed.R.Evid. 701 and, 803(1) and  803(3).

    h.  The Plaintiffs' present sense impressions and emotions are based on the acts of the Defendants and others. They are based on their observations of the actions of the Defendants and is admissible under  Fed.R.Evid. 701 and, 803(1) and  803(3).   It was also supported by the observations of other black Officers.  The complaints and issues raised by Horne and Brown was the first time any officers had actually taken the YVSF race issues to a complaint level to the YVSF commander, and those officers saw the Plaintiffs treated as outcasts.  **P EX. 26, ¶10 (Jones Decl. ¶10 & Israel Decl. ¶¶3-4).**  Officer Jones says that "Posters of suspects on the YVSF bulletin board were exclusively minority, with the exception of perhaps one white face which later appeared after Officers Horne and Brown complained about racism in the YVSF in 2000." **P EX. 26, ¶4 (Jones Decl. ¶4).** Minority officers generally felt a fear of reprisal were they to complain about racism in the YVSF . **P EX 26 at ¶5 (Jones Decl. ¶5).**

    i.  An observation of hostility is not hearsay, not an opinion, and not conclusory. It is the

observation of the  Plaintiffs and others based on the facts cited and as discussed above in

Section 3 (h).  It is admissible under Fed.R.Evid. 701 and, 803(1) and  803(3), among other

Rules.

j.  The record to which the Plaintiffs cite shows that other YVSF Officers who would

have been subject to the so-called PAM evaluations did not have one done for them, and neither

they nor the Plaintiffs had ever heard of one before or since Davin conducted on the Plaintiffs.

The Defendants do not deny that only the Plaintiffs were subject to them. Officer Brito, who

joined the YVSF with the Plaintiffs, never heard of PAM. **P EX 11 at 190 (Brito Dep. 190).**

In fact, then Deputy Superintendent Thomas Dowd , a commander over the YVSF, <u>admitted</u> that

PAMs were not "designed or used for evaluating every officer in the department." **P EX 10, at**

**35, 212 (Dowd Dep. 35, 212).**   Dowd further stated that "It was <u>not</u> my understanding that PAM

was to generate a meeting between supervisors and every officer, no, sir." (emphasis added)  **P**

**EX 10 at  214-215 (Dowd Dep. at 214-215).**    Moreover, Dowd was the Defendant City of

Boston's Rule 30(b)(6) designee as to PAM evaluations.  **P EX 10 at  2085 (Dowd Dep. at 208).**


k.  The Defendants' contention in this regard is confusing and indecipherable.  Under the

Rules of Civil Procedure and Local Rule 56.1, the Plaintiffs in the paragraphs cited simply

admitted to certain facts and denied others. Nowhere does the record show that the Plaintiffs

admitted to the "substance of the Defendants' testimony", but only to certain facts.  As to other

facts, the Plaintiffs denied them and, as required, set forth specific facts, based on the record the

Plaintiffs provided, on which the Plaintiffs rely.

l.  Again, this objection is confusing because it is based on Brown's own observations

and testimony that he and minority Officer Callender are close personal friends and socialize

together. Under no Rule of Evidence is this excluded.

      m. As with 3(k) above, the Defendants' contention in this regard is confusing and indecipherable. Under the Rules of Civil Procedure and Local Rule 56.1, the Plaintiffs in the paragraphs cited simply admitted to certain facts and denied others. As to other facts, the Plaintiffs denied them and, as required, set forth specific facts, based on the record the Plaintiffs provided, on which the Plaintiffs rely.

> **4. With one possible exception, none of the statements the Defendants seek to strike are excluded by the hearsay rule.**

      a. The black trooper's statement comes within Fed.R.Evid. 803(2) as an excited utterance or under Rule 803(3). It was quickly uttered as Bulman briskly left the Plaintiffs behind on their first week on the job without an assignment and left with the white officers, including new white officers McCarthy and Langa, who Bulman undertook to train, unlike the Plaintiffs. **P EX. 1 at 39-48 (Horne Dep. 39-48).** The statement also is admissible under Fed.R.Evid. 701.

      b. The Defendants' contention in this regard is confusing and indecipherable. The clear record observations of the witnesses support the statements made. The Defendants offer no discussion to the contrary or why it is inadmissible. See **P EX. 1 at 192-194 (Horne Dep. 192-194).**

      c. The record supports the statement made, but as to the hearsay exception it might be inadmissible other than under Fed.R.Evid. 803(d)(2) in that new Officers Langa and McCarthy were white officers Bulman favored over the Plaintiffs and minority officers, as discussed in the record.

      d. Again, the Defendants' contention in this regard is confusing and indecipherable. The clear record observations of the witnesses support the statements made. The Defendants offer no

discussion to the contrary or to why it is not admissible. Brown was present when Officer Baily repeatedly referred to himself as the Grand Wizard.  <u>See</u>  **P EX. 2 at 58-59, 102 (Brown Dep. at 58-59, 102).**

e.   These facts are based to direct percipient statements of witnesses and the facts, as the record shows.  The Defendants' objection is misplaced. The Defendants offer no analysis on this point.

f.   These facts are based to direct percipient statements of witnesses and the facts, as the record shows.  The Defendants' objection is misplaced. The Defendants offer no analysis on this point.

g.   These facts are based to direct percipient statements of witnesses and the facts, as the record shows.  The Defendants' objection is misplaced. The Defendants offer no analysis on this point.

**5.   The Plaintiffs Facts to which the Defendants object are supported by the record.**

a.   The record supports the statements in Plaintiff Facts 48b. The reference to Joyce's deposition is accurate in that it shows that state troopers were assigned to the YVSF.  As to Bulman and Davin working with them, the balance of the record establishes it.

b.   The record supports the Plaintiffs' Facts as stated.  The entire records shows that the decision to transfer certain officers in February 2000 was made well before the Plaintiffs complained in late February 2000.

c.   This objection is a repeat of 3(j) above.  The record to which the Plaintiffs cite shows that other YVSF Officers who would have been subject to the so-called PAM evaluations did not have one done for them, and neither they nor the Plaintiffs had ever heard of one before or since David did one for the Plaintiffs.  The Defendants do not deny that only the Plaintiffs were

subject to them.  In fact, then Deputy Superintendent Thomas Dowd , a commander over the YVSF, <u>admitted</u> that PAMs were not "designed or used for evaluating every officer in the department." **P EX 10, at 35, 212 (Dowd Dep. 35, 212).**    Dowd further stated that "It was not my understanding that PAM was to generate a meeting between supervisors and every officer, no, sir." **P EX 10 at 214-215 (Dowd Dep. at 214-215).**    Moreover, Dowd was the Defendant City of Boston's Rule 30(b)(6) designee as to PAM evaluations. **P EX 10 at 2085 (Dowd Dep. at 208).**    Officer Brito, who joined the YVSF with the Plaintiffs, never heard of PAM. **P EX 11 at 190 (Brito Dep. 190).**

Moreover, the Defendants' statement that "plaintiffs' allegations that PAM 'only' involved discussion of those items highlighted" is unclear and offers no explanation. To the extent that the Defendants make it clear later, the Plaintiffs reserve the right to respond.

d.  Plaintiffs admit to this correction. Foley testified he "discarded" the files, rather than "lost" them. **P EX 8 at 114-115, 187-188 (Foley Dep. at 114-115, 187-188).**  Such a correction (intentional discard rather than lost), however, further supports a potential adverse inference against the Defendants under the spoilation of evidence rule.   <u>See</u> <u>Testa v. Wal-Mart Stores, Inc.,</u> 144 F.3d 173, 176-178 (1st Cir. 1998).

e. The Defendants' contention is simply not supported by the record. In fact, Defendants' Facts 98 suggesting that Horne made three off-duty arrests should be stricken because the record to which the Defendants' cite (Defendants' Ex. 11 - "police reports") do not establish that the arrests were "off duty arrests."  There is no foundation for such a statement that they were "off duty arrests." In fact, one alleged off-duty arrest to which the Defendants cite, where Horne "activated himself" (last report of Defendants' Ex. 11) was shown in deposition to Lt. Foley who

<u>denied</u> that such terms mean that Horne was off duty. **Plaintiffs' Ex. 8, at 253-255 (Roach Decl. Ex. 8, Foley Dep. at 253-255); Plaintiffs' Ex. 15 (Roach Decl. Ex. 15, at 3 (Davin Dep. Ex. 23)).**

6.    **The prior racial composition of the YVSF, especially the day tour, is at the heart of this case.**

The Defendants cite to no facts to rebut the Plaintiffs' Facts, but only make a broad statement that the prior race make-up of the YVSF from 1993-1997 is "irrelevant". The proper question should be whether it is material. It is both relevant and material in that the history of the day tour shows that those assigned to pursue fugitives were all white. The Plaintiffs were the first minority officers, along with Officer Brito, to be so assigned. Hence, the resentment and attitude Bulman, and later Davin, one of the original "founders" of the YVSF, exhibited toward them, especially after they complained about racism within the unit and racism on how white officers treated minority citizens. While not dependant on these facts, it is a component of this case.

Before the Plaintiffs arrived, the day tour was an all white unit since its inception in 1993. Created in October 1993 as a prestigious, elite unit, the Youth Violence Strike Force ("YVSF"), which originally was under previously existing Anti-Gang Violence Unit (a night unit), was charged with reducing violence among Boston's youth and tracking fugitives. The YVSF was a day tour unit. **P EX. 9 at 37, 53-54, 71-72, 95 (Joyce Dep. at 37, 53-54, 71-72, 95); P EX. 5 at 42 (Davin Dep. 42); P EX. 6 at 27-28 (Bulman Dep. 27-28); P EX. 7 at 48-53 (French Dep. 48-53).** It later evolved into a unit which also works with the FBI, the Massachusetts State Police, the U.S. Marshall's office, ATF, the MBTA, the Sheriff's Office the U.S. Attorney's office, and other investigatory agencies tracking down and apprehending violent

10

fugitives. **P EX. 9 at 38-39 (Joyce Dep. at 38-39); P EX. 6 at 29-30, 52-53, 278 (Bulman Dep. 29-30, 52-53, 278); P EX. 7 at 48-53 (French Dep. 48-53); P EX. 8 at 43-45, 49-52 (Foley Dep. 43-45, 49-52).** Defendants Davin and Bulman were among those initially in the unit with Joyce, and all were white. **P EX. 9 at 48-50, 53, 75-76 (Joyce Dep. 48-50, 53, 75-76); P EX. 5 at 24-27, 180 (Davin Dep. 24-27, 180).** No minorities joined the day tour of unit from 1993 to 1996. **P EX. 8 at 67 (Foley Dep. 67).** As their supervisors, Davin and Bulman, and <u>their</u> superiors, admit, YVSF cruiser assignments were divided along strictly racial lines. With occasional exceptions, black officers rode together and white officers rode together. Davin and Bulman nearly always rode with the white officers. **P EX. 7 at 194 (French Dep. 194); P EX. 6 at 79-95, 172 (Bulman Dep. 79-95, 172); P EX. 23 (Exs. 6-7); P EX. 5 at 72-80 (Davin Dep. 72-80); P EX. 22 (Ex. 18, Ans. 6); P EX. 1 at 67-68, 73 (Horne Dep. 67-68, 73); P EX. 3 (Horne Ans. Int. 5); P EX. 4 (Brown Ans. Int. 5); P EX. 9 at 134-135 (Joyce Dept. 134-135).** Bulman and Davin had authority to assign officers to cruisers and to hand out mission assignments. **P EX. 9 at 212 (Joyce Dep. 212).**

After the Plaintiffs complained of racism in the YVSF, Superintendent Paul Joyce called a meeting of the Plaintiffs and a few other minority officers at the YVSF and told the Plaintiffs that he, Joyce, created the unit and, looking directly at Horne, said that he was not going to let anyone destroy it. **P EX 1 at 107-108 (Horne Dep. 107-108).** Joyce recalls it as expressing his "disappointment." **P EX 9 at 112-113 (Joyce Dep. 112-113).** Joyce admits to being close friends with two white officers about whom the Plaintiffs had complained and who started the YVSF with Joyce. **P EX 9 at 153-154 (Joyce Dep. 153-154).**

7. The Defendants' bald contention that the Plaintiffs' Fact that there was "no black

commander" in the YVSF is unsupported by anything contrary to the clear record to which the

Plaintiffs rely on this point.  The record show that from its inception, commanders of the YVSF

were <u>all</u> white at least until after the Plaintiffs were transferred out.  **P EX. 9 at 55-56, 66-68, 70,**

**75-76 (Joyce Dep. 55-56, 66-68, 70, 75-76).**

Furthermore,  Joyce admitted that, at least since 1993, there has never even been a black

Sergeant assigned to the day tour.  **P EX. 9 at 88 (Joyce Dep. 88).**   Officer Jones says that

"During my tenure, there was never been a black or minority commander of the YVSF . " **P EX.**

**26, ¶4 (Jones Decl. ¶4).** Jones was with the YVSF from 1993 to 2004 in the night unit. **P EX.**

**26, ¶1 (Jones Decl. ¶1).**

PLAINTIFFS STEVEN HORNE AND
RONALD BROWN,
By their Attorney,

/s/ Stephen A. Roach
Stephen A. Roach, Esq.
November 26, 2006               ROACH & WISE, LLP
31 State Street
Boston, MA 02109-2705
(617) 723-2800

CERTIFICATE OF SERVICE

I, Stephen A. Roach, Attorney for Plaintiff, hereby certify that on November 26, 2006, I
served Defendants with the within document by causing a copy of the same to be mailed and
faxed to their counsel of record and to be served electronically.

s/Stephen A. Roach
Stephen A. Roach